SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

CAYMAN ISLANDS REINSURANCE
CORPORATION, LTD., Michael C. Scott
a/k/a Michael E. Cole, William A.
Thompson, Paul V. Miller, Raymond L.
Dirks, Carl John Peterson, Defendants.

No. 82 Civ. 1166 (WCC).

United States District Court,
S.D. New York.

Dec. 6, 1982.

Durant, Mankoff, Davis, Wolens & Francis, and McMullen & Porter, P.C., Dallas, Tex., for defendants Cayman Reinsurance Corp., Ltd. and William A. Thompson; Joel Held, Waylon E. McMullen, Dallas Tex., and Bert Gusrae, Gusrae, Kaplan, Lowy & Bruno, New York City, of counsel.

Donald N. Malawsky, Regional Administrator S.E.C. New York Regional Office, New York City, for plaintiff; Anne C. Flannery, Linda N. Cassano, William G. McCabe, Sherry Stenson, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Michael C. Scott; Philip L. Graham, Gandolfo V. DiBlasi, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff Securities and Exchange Commission ("SEC") filed this action seeking to enjoin defendants from various alleged violations of the federal securities laws in connection with the underwriting, public offering and sale of $6,000,000 worth of securities issued by defendant Cayman Islands Reinsurance Corporation, Ltd. ("Cayman Re"). The case is presently before the Court on the SEC's motion to compel the testimony of defendant Michael C. Scott ("Scott") over Scott's assertion of the fifth amendment privilege against self-incrimination.[1] The SEC contends that Scott, who with the exception of the instant motion has appeared in this action *pro se,* waived his privilege by making certain factual statements regarding the case in a petition he submitted to the Ontario Supreme Court ("the petition"). Scott filed the petition in opposition to an application by the SEC seeking permission to take Scott's deposition in Canada.[2] For the reasons set forth below, I conclude that Scott has not waived his fifth amendment privilege. Thus the SEC's motion must be denied.

Background

The SEC alleges, *inter alia,* that Scott, who was the chief executive officer of Cayman Re, diverted a substantial portion of the proceeds of the Cayman Re offering via a loan to Marsta Cessions, a company allegedly organized by him.

On September 13, 1982, the SEC attempted to take Scott's deposition in Toronto, Ontario. At the beginning of the deposition, Scott was advised of his right to invoke the fifth amendment privilege against self-incrimination. Scott then sought to assert the protection of Canadian law, which

provides that civil testimony cannot be used against the witness in a criminal prosecution except a prosecution for perjury. After the SEC indicated that it could not and would not seek immunization of Scott's testimony, he conferred with a Canadian lawyer by phone. Based on that conversation, Scott refused to testify in the absence of an order from a Canadian court compelling him to do so.

On September 29, 1982, this Court issued letters rogatory seeking the assistance of the Supreme Court of Ontario in compelling Scott's appearance for the deposition. The SEC then applied to the Supreme Court of Ontario for enforcement of the letters rogatory, noting the applicability of the fifth amendment privilege in that proceeding. In response to that application, however, Scott filed an unsworn petition in which he expressed concern that a compelled deposition would jeopardize his fifth amendment right to remain silent. Specifically, Scott argued that if the SEC's application were granted it "would effectively over-ride the protection available to a respondent under United States jurisdiction, where such respondent may elect to invoke the protection of the Fifth Amendment to the Constitution of the United States." SEC Exhibit D, ¶ 7. Scott further objected that other defendants in this action "have elected not to testify, invoking the Fifth Amendment. To preclude such to this respondent is to discriminate." *Id.,* ¶ 8. Finally, Scott complained that the SEC was utilizing the Canadian judicial process "to circumvent the applicability and availability to the respondent of the Fifth Amendment." *Id.,* ¶ 9.

However, Scott did not limit his petition to argument. He also made factual averments including: (1) that he had been "invited to become interested in [Cayman Re] prior to the 1980 underwriting." *Id.,* ¶ 13; (2) that thereafter he was invited to become chief executive officer thereof, *Id.,* ¶ 16; (3) that he had invested $82,500 in Cayman Re, *Id.,* ¶ 14; and (4) that he was subsequently

---

1. The Court appointed Sullivan & Cromwell to represent Scott for purposes of this motion alone.

2. Scott is a Canadian citizen.

dismissed from the company, *Id.,* ¶ 13. Exhibit A to the petition, *inter alia,* (1) states that he never employed the alias Michael Cole, SEC Exhibit D ¶ 1 of Exhibit A; (2) denies that there was any agreement to invest the proceeds of the offering "incestuously," *Id.,* ¶ 2 of Exhibit A; (3) acknowledges his prior criminal conviction, *Id.* ¶ 3(a) and (f) of Exhibit A; (4) acknowledges the existence of Cayman Re's loan to Marsta Cessions, *Id.* ¶ 3(b) and (c) of Exhibit A; and (5) states that he no longer has any resources, *Id.,* ¶ 7 of Exhibit A.

The Supreme Court of Ontario granted the SEC's application and ordered Scott to appear for the deposition provided that the examination would be conducted pursuant to United States discovery rules and provided that Scott could invoke the protections of the Canada and Ontario Evidence Acts. On November 1, 1982, Scott appeared for the deposition, invoked the fifth amendment and refused to testify. The SEC informed Scott that it considered his petition to be a waiver of his privilege against self-incrimination and adjourned the deposition to seek a ruling by this Court.

*Discussion*

■ The issue thus presented is whether this Court should infer from Scott's unsworn petition to the Supreme Court of Ontario a testimonial waiver of his fifth amendment privilege against self-incrimination. As recently noted by the Second Circuit, a waiver may be inferred from a witness's prior testimony without inquiry into the witness's actual state of mind. See *Klein v. Harris,* 667 F.2d 274, 287 (2d Cir. 1981). Not surprisingly, however, courts are wary of inferring a waiver of such a fundamental right and "indulge every reasonable presumption" in favor of the party seeking to invoke the privilege. *Klein, supra,* 667 F.2d at 287. The court should presume a waiver only if:

(1) the witness's prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination.

*Id.*

■ Based on this standard, the SEC's motion to compel Scott's testimony must be denied. First, there is no "significant likelihood" that this Court, as the ultimate finder of fact in this case, will be misled by a one-sided view of the facts. As the Second Circuit stated in *Klein:*

> Our concern to focus on distortion is a function of the principle that a waiver of the fifth amendment's privilege against self-incrimination should be inferred only in the most compelling of circumstances. Such circumstances do not exist unless a failure to find a waiver would prejudice a party to the litigation.

*Id.* at 288.

The SEC, which does not dispute Scott's right to assert the privilege initially in the case,[3] offers no explanation as to how it will be anymore prejudiced by Scott's invocation of the privilege after submission of the petition than it was before the petition was filed. Presumably, Scott's testimony would be quite useful to the SEC, but the question here is whether, given the statements in the petition, the SEC would now be prejudiced by assertion of the right to remain silent. The Court is at a loss to identify any prejudice since the statements made by Scott amount to little more than a general denial of the SEC's allegations against him.

Moreover, there is no clear possibility that the unsworn petition would be admissible at trial. Scott filed the petition in order to resist having his deposition taken, not for purposes of presenting evidence to this Court and he surely cannot introduce the petition here, because it is the rankest form of hearsay. Thus, this case is not one in

---

**3.** In June of 1982, Scott consented to the SEC's request to obtain documents relating to Cayman Re which Scott had voluntarily surrendered to the United States Attorney for the Southern District of New York, whose office interviewed Scott in connection with an investigation.

which an assertion of the privilege would open the way to distortion of the facts by permitting the witness to choose a favorable stopping place in his testimony. *Cf. Rogers v. United States,* 340 U.S. 367, 371, 71 S.Ct. 438, 440, 95 L.Ed. 344 (1951).

Nor am I persuaded that Scott had reason to know that his petition would be considered a waiver of his fifth amendment privilege. In developing an objective test for the "reason to know" requirement, the Second Circuit has stated that the witness's prior statements must be both testimonial and incriminating. *Klein, supra,* 667 F.2d at 288. Testimonial statements are those made under oath in the same judicial proceeding. *Id.* Incriminating statements are those that directly inculpate the witness rather than dealing with merely collateral matters. *Id.* Accordingly, a witness who makes statements designed to influence the finder of fact on subjects that the witness is privileged to avoid, is deemed to "have reason to know" that his statements may be interpreted as a waiver of the privilege against self-incrimination.

In the present case, Scott's statements in his petition are not testimonial. *Klein* clearly requires that the statements be made under oath. *Id.,* citing *E.F. Hutton & Co. v. Jupiter Development Corp.,* 91 F.R.D. 110, 114 (S.D.N.Y.1981). The SEC's contention that because the statements were presented to a "formally constituted tribunal" they are of sufficient credibility to be deemed a waiver is neither persuasive nor supported by the authorities. Though presented to a court, the statements at issue here do not rise to the level of "testimony" since the degree to which unsworn averments are likely to influence a trier of fact is negligible at best. *Cf. id.; Ellis v. United States,* 416 F.2d 791, 805 n.37 (D.C.Cir.1969) (drawing distinction between disclosure in written statement and sworn testimony). Accordingly, because Scott's prior statements do not satisfy either prong of the standard required to infer a waiver, the SEC's motion to compel Scott's testimony is denied.

The SEC requests in the alternative that if Scott's fifth amendment privilege is upheld, his response to Plaintiff's Request for Admissions be stricken Scott responded to the request with a blanket assertion of the fifth amendment privilege against self-incrimination. The SEC contends that the response lacks the detailed specificity required by Rule 36, F.R.Civ.P. According to the SEC, Scott must provide for each request a detailed reason as to how his response to the request would be linked to useable evidence against him in a prosecution. Thus, the SEC wishes to have Scott explain how his admissions or refusals to admit would incriminate him.

Such a ruling would wedge Scott between a rock and a hard place. While an experienced lawyer might be able to draft a response to the requests that would provide greater specificity without crossing the line to an incriminating sworn admission, a *pro se* litigant such as Scott could scarcely be expected to do so. Moreover, "detailed specificity" is not required in every instance to support a claim of fifth amendment privilege. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because an injurious disclosure could result." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Here, given what is apparently an ongoing criminal investigation by the United States Attorney's Office into events at issue in the SEC's civil proceeding and Scott's *pro se* status, there is ample basis for determining that a more detailed response by Scott could result in an injurious disclosure. Thus, the SEC's motion to strike Scott's response to its request for admissions is denied.

SO ORDERED.